[L. A. No. 161.    Department Two.—October 24, 1896.]

WILLIAM N. BRADBURY, ADMINISTRATOR, ETC., APPELLANT, *v.* JOSIAH N. DAVENPORT ET AL., RESPONDENTS.

MORTGAGE—CONVEYANCE BY MORTGAGOR—RELEASE OF RIGHT OF REDEMPTION — ESCROW — VALUE OF EQUITY — ACTION BY ADMINISTRATOR — PLEADING.—A complaint by the administrator of a deceased mortgagor alleging in substance that the mortgagor, when sick and financially embarrassed, was persuaded by the mortgagee to sign an agreement and to place a deed in escrow with the cashier of a bank, by the terms of which agreement and escrow it was provided that if the mortgagor failed to make payment of the mortgage by a fixed date, the deed was to be delivered to the mortgagee, in cancellation and satisfaction of the note; that said deed was delivered by said cashier to the mortgagee after knowledge of the death of the mortgagor, and after notice to the cashier by the administrator not to deliver the same; that the deed was recorded by said mortgagee; that such deed constitutes a cloud upon the title of the administrator, and his right to subject the property to administration; that the equity in the property is of the value of four thousand dollars; that the estate is largely indebted, and that it is necessary to sell the interest of the estate in the premises in order to pay said indebtedness, and praying that the deed be decreed to be void, or that the same be decreed to be a mortgage to secure any sum found due to the mortgagee, and that the property be decreed to be assets of the estate, and subject to administration, states a cause of action as against a general demurrer.

ID.—CONSTRUCTION OF PLEADING—VALUE OF INTEREST OF ESTATE—UNCERTAINTY—ABSENCE OF SPECIAL DEMURRER.—The allegation that the equity in the property is of the value of four thousand dollars, though

subject to a demurrer for uncertainty and ambiguity, yet, in the absence of such demurrer, and as against a general demurrer, will be construed as an allegation that the interest of the estate in the property described in the deed is of the value of four thousand dollars over and above the indebtedness of the estate to the mortgagee.

ID.—FAILURE TO AVER TENDER OR OFFER TO PAY MORTGAGE—REMEDY OF MORTGAGEE—INEQUITY OF REQUIRING TENDER. — The failure of the complaint of the administrator to aver a tender of the mortgage debt, or an offer to pay the same, does not affect the cause of action to have the deed set aside under which the mortgagee claims to have acquired an absolute title; such relief, if granted, not being such as to leave the mortgagee without appropriate remedy to enforce the mortgage debt; and it would be inequitable to require the administrator of the deceased mortgagor to make a tender of the amount due, which could not be raised upon the premises, whatever their value, before it should be determined that the deed was itself only a mortgage.

ID.—VALIDITY OF CONTRACTS—RENOUNCING RIGHT OF REDEMPTION. — Under section 2889 of the Civil Code, and also aside from its provisions, a mortgagor is not allowed to renounce beforehand his privilege of redemption, nor can he by any form of words make a valid executory contract to preclude himself from redeeming; though he may for a sufficient consideration execute a subsequent conveyance or release of the right of redemption to the mortgagee.

ID.—CONSIDERATION FOR CONVEYANCE OR RELEASE—BURDEN OF PROOF.— A conveyance or release by the mortgagor to the mortgagee must be for a consideration which would be deemed reasonable if the contract were between other parties dealing in similar property in the vicinity, and any marked undervaluation of the property in the price paid will vitiate the proceeding; and the burden is upon the creditor to show that the right of redemption was given up deliberately, and for an adequate consideration.

ID.—EFFECT OF ESCROW—DELIVERY OF DEED—RELATION—DEATH OF MORTGAGOR—RELIEF IN EQUITY.—If it be conceded that the delivery of the deed from the mortgagor to the mortgagee, which was placed in escrow, took effect by relation as of the date of the escrow, and that it might be delivered under the condition of the escrow, notwithstanding the intervening death of the mortgagor, yet the administrator of the deceased mortgagor is not thereby precluded from obtaining relief in a court of equity, where the circumstances of the case require its interposition.

APPEAL from a judgment of the Superior Court of San Diego County. E. S. TORRANCE, Judge.

The facts are stated in the opinion.

*Withington & Carter*, for Appellant.

The contract is void, because it is an agreement for forfeiture of the property subject to the lien in satisfac-

tion thereof, in case the debtor does not pay before July 1st; also, because it is in restraint of the right of re-demption from the lien, since it cuts down the right of redemption to less than four months. (Civ. Code, secs. 1667, 2889, 3513; Jones on Mortgages, secs. 251, 1042, 1043, 1045; *Tennery* v. *Nicholson*, 87 Ill. 464; *Batty* v. *Snook*, 5 Mich. 231; *Peugh* v. *Davis*, 96 U. S. 332.) The deed being incident to and executed in pursuance of a void contract is itself void, and cannot make the illegal transaction valid. (Civ. Code, sec. 1608; *Moffett* v. *Bulson*, 96 Cal. 106; 31 Am. St. Rep. 192.) The deed was not an executed contract. The heirs and administrator notified Anderson not to deliver it, and the delivery was a nugatory act. (Civ. Code, sec. 1661; *Thompson* v. *Doaksum*, 68 Cal. 598; *Miller* v. *Sears*, 91 Cal. 282; 25 Am. St. Rep. 176; *Raisch* v. *San Francisco*, 80 Cal. 6; Hermann on Estoppel, 922.) Transactions of this nature will be closely scrutinized so as to prevent any oppression of the debtor, and the release must always be for an adequate consideration. (*Peugh* v. *Davis, supra.*) No tender was necessary, and therefore none need be alleged. (*Wiard* v. *Brown*, 59 Cal. 194; *Wingerter* v. *Wingerter*, 71 Cal. 105; Code Civ. Proc., secs. 1569, 1570, 1582, 1589; *Pennie* v. *Hildreth*, 81 Cal. 127.)

*Haines & Ward*, for Respondent Josiah N. Davenport.

The doctrine of section 2889 of the Civil Code, "once a mortgage always a mortgage," does not refer to future contracts. (*Watson* v. *Edwards*, 105 Cal. 70, 75.) The written agreement between Keniston and Davenport was a conditional contract of sale complete in all its elements. Both Keniston and Davenport were bound, each to the other, from the time of the mutual deliveries to Anderson, and neither could revoke his deposit. (*Cannon* v. *Handley*, 72 Cal. 133; *McDonald* v. *Huff*, 77 Cal. 279; *Millet* v. *Parker*, 2 Met. (Ky.) 608; *Shirley* v. *Ayers*, 14 Ohio, 308; 45 Am. Dec. 546; *Stanton* v. *Miller*, 58 N. Y. 192; *Schmidt* v. *Deegan*, 69 Wis. 300; *Prutsman* v. *Baker*, 30 Wis. 644; 11 Am. Rep. 592.) Neither had An-

derson the right to comply with plaintiff's notice not to deliver the deed. (*Evert* v. *Agnes*, 4 Wis. 343, 353; 65 Am. Dec. 314; Washburn on Real Property, 2d ed., 615.) And immediately after the condition became absolute, Davenport was absolutely entitled to it, and by virtue of its delivery to him became the owner of the premises. (*Cannon* v. *Handley, supra*.) This would have been so even if the condition had happened after Keniston's death instead of before, as it did. (*Bostwick* v. *McEvoy*, 62 Cal. 496, 499, and cases cited; *Webster* v. *Kings County Trust Co.*, 145 N. Y. 275; *Prutsman* v. *Baker, supra; Bury* v. *Young*, 98 Cal. 446; 35 Am. St. Rep. 186; *Crain* v. *Wright*, 43 N. Y. Sup. Ct. 74; *Wittenbrock* v. *Cass*, 110 Cal. 1.) Under the law in this state as to mortgages there is no such thing as an equity of redemption in the mortgagor, because no mortgage conveys the legal title; it is a mere lien and a chattel, and the legal and equitable estate remains in the mortgagor. (Civ. Code, sec. 2920; *Carpenter* v. *Benham*, 40 Cal. 221; *McGurren* v. *Garrity*, 68 Cal. 567; *Tapia* v. *Demartini*, 77 Cal. 383; 11 Am. St. Rep. 288; *Stewart* v. *Powers*, 98 Cal. 514; Pomeroy's Equity Jurisprudence, sec. 1188; *Sichler* v. *Look*, 93 Cal. 600.) A tender was necessary, and an allegation of it was essential. (*Hall* v. *Arnot*, 80 Cal. 348; *Raynor* v. *Drew*, 72 Cal. 307, 311; *Brandt* v. *Thompson*, 91 Cal. 458, 462; *De Cazara* v. *Orena*, 80 Cal. 132; *Pico* v. *Gallardo*, 52 Cal. 206; *Spect* v. *Spect*, 88 Cal. 437; 22 Am. St. Rep. 314.)

HAYNES, C.—This appeal is from a judgment rendered against the plaintiff upon demurrer to the complaint.

The complaint, after alleging the appointment of the plaintiff as administrator of Daniel Keniston, deceased, and describing the property involved in the controversy herein, alleged in substance as follows: That on January 1, 1891, Keniston executed a mortgage to the defendant Davenport upon certain of the real estate described in the complaint to secure the sum of four thousand dollars, with interest at ten and one-half per cent per annum,

payable in two years from said last-mentioned date, which mortgage was duly recorded; and defendant Davenport claimed that there was due thereon of principal and interest to March 1, 1895, the sum of three thousand nine hundred and thirty-three dollars and eighty-seven cents.

The remainder of the complaint (except paragraph 4, which need not be noticed) is as follows: "That on or about said first day of March, 1895, the said Daniel Keniston, being then sick in body and embarrassed financially, and being persuaded thereto by the representations of said defendant Davenport, was induced to sign, and did sign, a certain agreement with said Davenport, and to execute a deed to lots 4 and 5 of the premises, above described, to said J. N. Davenport, which he, the said Keniston, handed, together with said agreement, to the defendant J. H. Anderson, cashier of the Bank of Escondido. That by the terms of said agreement, upon the payment to said cashier of a sum of money, not expressed in said agreement, before July 1, 1895, the said cashier was to discharge said mortgage and return the note secured thereby to said Keniston, and that in case said Keniston should not pay said sum of three thousand nine hundred and thirty-three dollars and eighty-seven cents, and interest to July 1st, before said July 1, 1895, the said cashier should deliver said deed to said Davenport and the note to said Keniston, and the delivery of said deed should be in full cancellation and satisfaction of said note.

" 3. That the said Daniel Keniston from the time of the execution of said agreement continued sick and unable properly to attend to his business, and from and after the twenty-ninth day of June until the ninth day of July, 1895, the said date of his death, was unconscious, and that subsequent to the death of said Daniel Keniston, and after plaintiff had applied for administration in behalf of himself and the heirs of said Keniston, he notified the defendant Anderson not to deliver said deed to said Davenport, but that he, the said Ander-

son, in violation of the trust reposed in him, and well knowing that said Keniston was dead, and after said notice, upon the demand of said Davenport, upon the twenty-fourth day of July, 1895, delivered said deed to said Davenport, and the said Davenport caused the same to be recorded, and claims to be the owner of said property. That no demand had been made by said Davenport before said last date for said deed.

"5. That said deed constitutes a cloud upon the title of plaintiff, and his right to subject said property to administration. That the equity in said property is of great value, namely: The sum of four thousand dollars, and that the estate of said Daniel Keniston is largely indebted, and that it is necessary to sell the interest of the estate in said premises in order to pay said indebtedness."

The prayer of the complaint is that said deed from Daniel Keniston to the defendant Davenport be decreed to be void and of no effect, or that the same is a mortgage to secure any sum which may be found due from said intestate to said defendant Davenport, and that said property be further decreed to be assets of the estate and subject to administration.

The demurrer to the complaint is as follows: "That said complaint does not state facts sufficient to constitute a cause of action in this, to wit: "1. That it shows on its face that this defendant is the owner of lots four (4) and five (5) in section four (4), township twelve (12) south, range two (2) west, San Bernardino meridian; 2. That the complaint contains no offer or tender, or any allegation of offer or tender, to pay the overdue mortgage indebtedness to this defendant therein alleged to be subsisting."

This demurrer was sustained, and, the plaintiff declining to amend his complaint, judgment was rendered "that the complaint herein be, and the same is hereby, dismissed on the merits," and for costs.

Appellant insists that said contract or agreement deposited with Anderson with the deed is void, because it

is an agreement for forfeiture of the property subject to
the lien in case the debtor does not pay before July 1st;
and, in support of this proposition, he cites section 2889
of the Civil Code, which is as follows: "All contracts
for the forfeiture of property subject to lien in satisfac-
tion of the obligation secured thereby, and all contracts
in restraint of the right of redemption from a lien, are
void."

Aside from the provision of said section of the Civil
Code, it is well settled that the mortgagor is not allowed
to renounce beforehand his privilege of redemption;
that while generally any one may renounce any privi-
lege or surrender any right he had, that an exception is
made in favor of debtors who have mortgaged their
property, for the reason that their necessities often drive
them to make ruinous concessions; that when one bor-
rows money upon the security of his property, he is not
allowed by any form of words to preclude himself from
redeeming (Jones on Mortgages, secs. 251, 1045), though
the doctrine "once a mortgage, always a mortgage"
does not apply to subsequent contracts. (*Watson* v.
*Edwards*, 105 Cal. 70, 75.)

In *Peugh* v. *Davis*, 96 U. S. 332, it was held that an
equity of redemption is so inseparably connected with
a mortgage that it cannot be waived or abandoned by
any stipulation of the parties made at the time, even if
embodied in the mortgage, though a subsequent release
of the equity of redemption may undoubtedly be made
to the mortgagee.  As to such release, the court, by
Field, Justice, said: "It must appear by a writing im-
porting in terms a transfer of the mortgagor's interest,
or such facts must be shown as will operate to estop him
from asserting any interest in the premises.  The re-
lease must also be for a consideration which would be
deemed reasonable if the transaction were between other
parties dealing in similar property in its vicinity.  Any
marked undervaluation of the property in the price
paid will vitiate the proceeding."

In relation to such subsequent agreement, Jones, in his

valuable work on Mortgages, section 251, says: "A subsequent agreement that what was originally a mortgage shall be regarded as an absolute conveyance is open to the same objection [that is, the objection to such agreement in the mortgage itself], and will not be sustained unless fairly made, and no undue advantage is taken by the creditor. The burden is, therefore, upon the creditor to show that the right of redemption was given up deliberately and for an adequate consideration."

In support of this proposition the author cites, among many other cases, *Villa* v. *Rodriguez*, 12 Wall. 323, from which we quote the following passage: "The law upon the subject of the right to redeem where the mortgagor has conveyed to the mortgagee the equity of redemption is well settled. It is characterized by a jealous and salutary policy. Principles almost as stern are applied as those which govern where a sale by a *cestui que trust* to his trustee is drawn in question. To give validity to such a sale by a mortgagor it must be shown that the conduct of the mortgagee was, in all things, fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears and poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instrument employed is immaterial. That the mortgagor knowingly surrendered and never intended to redeem is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt, with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved, require that such should be the law."

Respondent contends, however, that this case is conclusively settled by this court in *McDonald* v. *Huff*, 77

Cal. 279. But that case is clearly distinguishable from this. In that case an unsecured debt, as well as a debt secured by a mortgage, was to be satisfied by the deed deposited in escrow, if such debts were not otherwise paid within the time limited by the agreement, so that a price in addition to the amount of the mortgage lien was paid for the property, and there is no indication, either in the statement of facts or in the opinion of the court, but that the price thus paid was the full value of the property conveyed; while in the case at bar the plaintiff, while not disputing respondent's right to a lien as security for the amount of the mortgage debt and interest, alleges that the equity of the estate in said premises is of the value of four thousand dollars. In the absence of a special demurrer we must hold this to be an allegation that at the commencement of this action said premises were worth four thousand dollars more than the amount secured by the mortgage, with interest to that date.

Respondent also contends that the deed to him took effect when delivered, as of the date of the escrow, and that the agreement was, therefore, fully executed before this action was begun. But that does not conclude the plaintiff. In *Russell* v. *Southard*, 12 How. 139, it was held that, though a mortgagee in possession may take a release from the mortgagor, the transaction is to be carefully scrutinized, and if any unconscientious advantage was taken, the release will be set aside.

Conceding that the depositary may, upon the happening of the condition, deliver the deed held by him in escrow, notwithstanding the death of one of the parties to the escrow agreement, the transaction is not placed beyond the control of a court of equity if the circumstances of the case require its interposition.

It is said, however, by respondent, that the term " equity," when applied to mortgages in this state, describes nothing; and quotes Pomeroy's Equity Jurisprudence, section 1188, to the effect that it is an entire misuse of language to apply the name " equity of re-

demption " to the legal estate of the mortgagor. *Sichler*
v. *Look*, 93 Cal. 600, is also cited, where it is said in
substance that the clause usually inserted in decrees of
foreclosure, "that the defendant be forever barred and
foreclosed of and from all equity of redemption," etc.,
does not add to the effect of a sale under the decree be-
yond what it would have had if the provision had been
omitted. But the learned justice who wrote the opinion
refers to the matter as one of common practice, and
says: "Its insertion is due to the conservatism of the
profession, which hesitates to adopt a reform in pro-
cedure, and prefers to adhere to the forms which were
used under a different system."

If the allegation contained in said fifth paragraph
had been specially demurred to upon the ground of un-
certainty or ambiguity, such demurrer should have
been sustained; but we think, when tested by a general
demurrer, that the allegation is a' sufficient statement
that the interest of the estate in the property described
in the deed is of the value of four thousand dollars over
and above the indebtedness of the estate to the defend-
ant. It is alleged that the said deed constitutes a cloud
upon the title of plaintiff and his right to subject said
property to administration. The "equity," therefore,
must refer to the interest which the estate would have
had in the land subject to the mortgage; and, as the
demurrer concedes the truth of this allegation, a cause
of action was stated entitling the plaintiff to relief upon
that ground, if no other.

Respondent contends, however, that the complaint is
fatally defective because it contains no offer or tender,
or any allegation of offer or tender, to pay the overdue
mortgage indebtedness. They treat this as an action to
quiet title, or as an action to redeem. Strictly speak-
ing, it is neither. It alleges that a mortgage was given,
that at the date of the deed and agreement a subsisting
debt secured by the mortgage was due, unpaid, and en-
forceable under the mortgage, which was then, and still
would have been, a valid lien upon the premises, alleges

facts which show the invalidity of the deed, and prays that the said deed be canceled, or that it be declared a mortgage to secure any sum that may be found due from the intestate to defendant Davenport.

Plaintiff treats the lien as still subsisting. A bill in equity to redeem from a subsisting and enforceable mortgage lien would not lie, as the lien could be discharged by payment; but the defendant claims to have an absolute title to the land, and that the mortgage, which formerly subsisted, has been paid and discharged by the conveyance of March 1, 1895. If the decree prayed for in a given case would leave the defendant without remedy for the recovery of the money which would have been secured by the mortgage if a deed had not been subsequently given, it is clear that a court of equity would not grant it unless the plaintiff had tendered or offered to pay the money which he alleged the deed was given to secure, whether the debt was barred by the statute of limitations or not. But the decree here sought can have no such effect. The suit is brought, not to deprive the defendant of any of his just rights, but to determine the validity of the transaction by which the defendant claims what amounts to a forfeiture of the mortgaged property, and not to deprive him of a remedy whereby he may collect his debt. To impose upon the plaintiff the condition that he shall first tender payment, would give the defendant a benefit or advantage of great value from what is, upon the facts alleged, a transaction from which he should not be permitted to derive any benefit or advantage; that is, he could stand upon the apparent title conveyed by the deed without foreclosure, for all time, knowing that his debtor cannot quiet his title against him without payment of the debt and interest, though barred by the statute, with the power of alienation at any time to an innocent purchaser; advantages which he did not and could not have had under the mortgage.

Nor is it true that the debtor who has given a deed absolute in form as security for the payment of his debt

must, under all circumstances, tender payment before he can litigate the character of the instrument; as, for example, where the debt is not due, and the grantee asserts an absolute title, or is attempting to sell and convey to a stranger. A court of equity will not tie its hands by an unbending rule which would require it to impose inequitable terms, or do any injustice, in a given case falling within a general class though having peculiar or distinguishing features. There are sufficient facts appearing in the complaint, though not clearly stated, to show that the imposition of the condition of plaintiff's right to maintain this action, namely, that he must tender payment of the mortgage debt to the defendant, would result in a denial of justice.

Keniston died July 9th, plaintiff was appointed administrator July 23d, and this action was commenced July 30th, the deed to defendant Davenport having been delivered on the 24th.

It is alleged that the estate is largely indebted, and that a sale of the interest of the estate in the premises described in the deed is necessary in order to pay said indebtedness. Under such circumstances it would be inequitable to require a tender of the amount due as a condition upon the performance of which alone the action could be maintained, and a compliance with such condition would appear, from the facts stated, to be impossible. Certainly the money could not be raised upon the premises embraced in the deed, whatever its value, until it should be determined that the deed was itself only a mortgage.

We think the court erred in sustaining the demurrer, and that the judgment should be reversed, with leave to the plaintiff to amend his complaint if so advised.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with leave to the plaintiff to amend his complaint if so advised.

MCFARLAND, J., TEMPLE, J., HENSHAW, J.